UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| Greenpoint Tactical Income Fund LLC, and | Case No. 19-29613-gmh |
| GP Rare Earth Trading Account LLC, | Case No. 19-29617-gmh |
| Jointly Administered Debtors. | Chapter 11<br>(Jointly Administered<br>Under Case No. 19-29613) |

---

**DEBTORS' OBJECTION TO MOTION OF SECURITIES AND EXCHANGE COMMISSION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

---

Greenpoint Tactical Income Fund LLC ("GPTIF") and GP Rare Earth Trading Account LLC ("GPRE") (together "Debtors") by their counsel Steinhilber Swanson LLP, by Michael P. Richman and Claire Ann Richman, hereby object to the Motion of the Securities and Exchange Commission for the Appointment of a Chapter 11 Trustee or, Alternatively, to Convert the Case to Chapter 7, filed October 11, 2019 ("Trustee Motion"). In support of their Objection, the Debtors state as follows:

## PROCEDURAL BACKGROUND

1. On October 4, 2019 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned cases.

2. The Debtors remain in possession of their property and are operating their business as debtors in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. The Securities and Exchange Commission ("SEC") filed the Trustee Motion on October 11, 2019 in each of Debtors' matters, Dkt 17 and 19.

4. By Minute Entry on the Docket entered October 12, 2019, the Court denied (without prejudice) the portion of the SEC Motion that sought in the alternative to convert the

cases to chapter 7, for failure to comply with local rules. At a Status Conference held by the Court on October 17, 2019, the SEC represented that it would no longer move for conversion of the cases to chapter 7, and the Court set November 1, 2019 as the deadline for the filing of this Objection to the remaining portion of the motion seeking appointment of a chapter 11 trustee. No other motion for the appointment of a trustee or examiner has been made, and, as of the date of this Objection, no official committee has been appointed. An organizational meeting of creditors under § 341 of the Bankruptcy Code is scheduled to be held on November 4, 2019.

## THE DEBTORS' PRE-PETITION BUSINESS

5. GPTIF is a Wisconsin limited liability company with its principal place of business in Milwaukee, Wisconsin. GPTIF is a private investment fund managed by (a) Greenpoint Asset Management II LLC ("GP Management"), a Wisconsin limited liability company, whose President and CEO is Michael Hull ("Hull"); and (b) Chrysalis Financial LLC ("Chrysalis), a Wisconsin limited liability company located in Milwaukee, Wisconsin, whose manager is Christopher Nohl ("Nohl"). GPTIF's principal prepetition business was investing in rare gems and minerals (together "gemstones"). The gemstones are owned by GPTIF's wholly-owned subsidiary, GPRE, also a Wisconsin limited liability company with its principal place of business in Milwaukee, Wisconsin. Since their founding in late 2013, through monies raised from the investors (of whom there are now 142 Members of GPTIF) and through purchases and sales of gemstones, the Debtors have amassed a portfolio (owned by GPRE) valued at approximately $75 million. GPTIF also has investments in other businesses which it believes have a fair market value of about $30 million.

6. Certain of the Debtors' Managing Members have been under investigation by the SEC since at least 2013. In May 2016, the SEC referred the matter for criminal investigation by the FBI. SEC subsequently closed its first investigation into the Debtors' management, only to

2

open a new one again in March 2017, the same day that the FBI executed search warrants to examine GPTIF's gemstone and other assets. All of these investigations concerned, *inter alia,* valuation issues related to the operations of GPTIF. The FBI, within ten weeks of seizure, returned all gemstone assets to GPTIF and has never charged anyone in connection with its investigation. Debtors have no reason to believe that any FBI investigation is ongoing.

7.  SEC, however, has continued investigating. In May 2019, SEC staff advised the Debtors' Managing Members that they intended to seek approval to file a civil action; that action, more fully described below, was filed on September 30, 2019. The Debtors are not defendants in that action, and the SEC did not file, contemporaneously with that action, or at any time thereafter, a motion for any injunction or other interim relief against Debtors' management. For the six years that the SEC has been investigating the Debtors and affiliated parties, and despite having numerous enforcement powers, it has never sought provisional relief of any kind against the Debtors, or otherwise to protect Debtors' Members or creditors, until after the Debtors sought to protect its Members and creditors by commencing these chapter 11 cases.

## **DEBTORS' POST-PETITION BUSINESS**

8.  The chapter 11 cases have been filed primarily for the limited purpose of having the Court oversee (pursuant to Bankruptcy Code § 363) a sale process to sell a sufficient quantum of gemstones as will yield proceeds sufficient to pay administrative expenses and allowed claims in full, pursuant to one or more chapter 11 plans of reorganization. The Debtors' proposed sale process is set forth in detail in their Motion for (A) Approval of Gemstone Sale Process and (B) Protective Order, which was filed with this Court on October 28, 2019 (the "Gemstone Sale Motion") [Dkt 39].

9. The Debtors may also propose for sale other assets consisting principally of investments in other companies. Depending on the present and prospective future success of all such sales the Debtors may also provide through their chapter 11 plans for their investor Members to have an opportunity to redeem their investments.

10. In order to meet these objectives, the Debtors require the dedication and services of their Managing Members, by their principals Hull and Nohl, which they are not likely to receive if a trustee is appointed. As set forth in the Debtors' Gemstone Sale Motion, the Managing Members have extensive experience in gemstone transactions and a deep knowledge of the market (including the network of parties who would need to be involved in consignment and other sales through intermediaries; and privately-negotiated transactions). The Debtors also require the services of their Managing Members in assessing claims that may be filed in these cases, as well as determining strategic actions in relation to assets (such as the potential sale of non-gemstone investments) and prosecuting claims of the Debtors.[1]

11. As set forth in the Debtors' Gemstone Sale Motion, the Managing Members have been instrumental to the Debtors' acquisition and sale of gemstones and will be essential to the success of the sale process in these chapter 11 cases. They know the provenance of every significant part of their gemstone portfolio, and they are experts in the gemstone markets. They know the parties who would be likely purchasers for their highest value gemstones, and they have relationships with consignees, intermediaries, and others who are likely to be involved in transactions. Their knowledge of the gemstone portfolio of the Debtors is so extensive that it is

---

[1] In addition, the Managing Members are needed to direct the timely payment of a modest amount of ordinary course bills (leases, payroll for one employee), and other activities attendant to a sale process (such as maintaining their office and retail gallery, and attending industry trade shows).

4

unlikely that sales of Debtors' gemstones could be achieved at anything close to fair market values without their full involvement and cooperation.

12. During these chapter 11 cases, neither the Debtors nor their Managing Members will be soliciting investments from existing or prospective investors. The GPTIF Operating Agreement permits distributions to Members (including the Managing Members) upon request based upon the fair market value of assets under management, provided there is sufficient cash and the Managing Members approve. During these cases, if the Debtors wish to make distributions to Members (including the Managing Members' compensation), the Debtors will move the Court for approval before any such distributions are made. The only "solicitation" that the Debtors and their Managing Members are expected to undertake in these chapter 11 cases is the solicitation of votes in connection with a Disclosure Statement, a process which will be completely transparent and subject to this Court's approval, as required by the Bankruptcy Code.

13. Any sale process attempted by a trustee is likely to take much longer, and yield materially lower values, than a process run by the Managing Members. For virtually every other part of these cases, a trustee will be much more expensive and much less efficient in achieving the Debtors' objectives than the Managing Members, from evaluating and determining sales prospects for other investments, assessing claims, and developing chapter 11 plans providing for claims and the future conduct of the Debtors' businesses. Further, a trustee is unlikely to have expertise remotely comparable to the Managing Members in gemstone assets like those that make up the bulk of GPTIF's assets, and therefore will have to engage other professionals to assist in the disposition of those assets. The addition of a trustee and other professionals could add hundreds of thousands of dollars of administrative expenses that could otherwise be avoided, to the detriment of the Debtors' estates.

14. Given the limited scope of these cases, and the indispensable role that the Managing Members have in achieving the Debtors' objectives in these cases, the Debtors do not believe that the appointment of a trustee could yield any benefit to their estates whatsoever. To the contrary, the Debtors believe that the appointment of a trustee could be economically disastrous to their estates by adding administrative expenses and damaging the Debtors' ability to sell assets at the highest values, losing potentially millions of dollars. The potential expenses and asset sale losses from such an appointment could also destroy the Debtors' ability to reorganize, and leave them with no choice but to liquidate their businesses. The Debtors thus submit that the Trustee Motion fails to prove "cause" for the appointment of a chapter 11 trustee, and also fails to prove that such an appointment would be in the interests of creditors, investor-Members, or the estates. Debtors submit that such an appointment would in fact be manifestly contrary to such interests.

## APPLICABLE LEGAL STANDARDS

15. The Bankruptcy Code provides, in pertinent part, that the Bankruptcy Court "shall order appointment of a trustee for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case." 11 U.S.C. § 1104(a)(1). The statute also provides that the Bankruptcy Court shall order the appointment of a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." *Id.*, § 1104(a)(2).

16. The appointment of a chapter 11 trustee is an "extraordinary remedy, and there is a strong presumption in favor of allowing the debtor to remain in possession." *In re Berwick Black Cattle Co.,* 405 B.R. 907, 912 (Bankr. C.D. Ill. 2009). The moving party carries the burden of proving the grounds that justify the appointment of a chapter 11 trustee, and must overcome the strong presumption that a debtor should remain in possession. *In re LHC, LLC*, 497 B.R. 281, 291

(Bankr. N.D. Ill. 2013), *citing In re Madison Management Group, Inc.*, 137 B.R. 275, 281 (Bankr. N.D. Ill. 1992). The moving party's burden requires clear and convincing evidence. *In re LHC, LLC*, 497 B.R. at 291, *In re Berwick Black Cattle Co.,* 405 B.R. at 912.

17. Whether a trustee should be appointed for cause is a "fact-sensitive determination that must be made on a case-by-case basis." *In re LHC, LLC*, 497 B.R. at 291 (Bankr. N.D. Ill. 2013). Courts examine both pre- and post-petition conduct of the debtor or its management in making this determination. *Id*. However, on a motion for appointment of a trustee, the focus should be on the debtor's current activities, instead of any alleged past misconduct. *In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001). The determination of whether cause is established is solely within the discretion of the court. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir. 1989).

18. Furthermore, section 1104(a)(1)'s reference to "gross mismanagement" represents a recognition that "some degree of mismanagement exists in virtually every insolvency case and that mere mismanagement does not, by itself, constitute cause." *In re Sletteland*, 260 B.R. at 657, *citing* 7 Collier on Bankruptcy, ¶1104.023ci (15th L.King. ed.); *In re Sundale, Ltd*., 400 B.R. 890, 907 (Bankr. S.D. Fla. 2009). Gross mismanagement "suggests some extreme ineptitude on the part of management to the detriment of the organization…[b]ut it must rise above simple mismanagement to achieve the level envisioned by the Code." *In re Sundale,* 400 B.R. at 904, *citing In re Mako, Inc.,* 102 B.R. 809, 812 (Bankr. E.D. Okla. 1988).

A. **THE SEC HAS NOT PROVED, AND CANNOT PROVE, CAUSE FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE WITHIN THE MEANING OF THE STATUTE**

19. Because the burden of proof requires clear and convincing evidence, mere contested allegations that a debtor or its management engaged in fraud, dishonesty or similar

conduct prepetition are not sufficient to warrant appointment of a trustee. *See In re Tanglewood Farms, Inc.*, 2011 Bankr. LEXIS 624* (Bankr. E.D.N.C. February 10, 2011); *In re Hamilton*, 2012 Bankr. LEXIS 2701* (Bankr. E.D.N.C. June 14, 2012); *Piedmont Center Investments, LLC*, 2011 Bankr. Lexis 4659* (Bankr. E.D.N.C. Sept. 8, 2011).

20. The Trustee Motion appears to be based entirely upon the contested allegations set forth by the SEC in United States Securities and Exchange Commission v. Bluepoint Investment Counsel, LLC, Michael G. Hull, Christopher J. Nohl, Chrysalis Financial LLC, and Greenpoint Asset Management II LLC, case no. 19-cv-809 (United States District Court, Western District of Wisconsin) ("SEC Civil Action"), a case which was filed on September 30, 2019. Virtually every allegation in the Trustee Motion is linked to a portion of the complaint in the SEC Civil Action. The SEC Civil Action does not name the Debtors as parties, but does name the Debtors' Managing Members and their principals Hull and Nohl. The time for the Managing Members, Hull and Nohl, to respond to the SEC Civil Action is November 29, 2019. Debtors have been informed by defense counsel in the SEC Civil Action that the defendants in that case will move to dismiss the action for failure to state a claim upon which relief can be granted.

21. The SEC's allegations of "cause" for the appointment of a trustee under 11 U.S.C. § 1104(a)(1) (Trustee Motion, ¶¶ 1-31) fall into several distinct categories all of which relate solely to the Debtors' pre-petition business: (a) allegations that the Managing Members artificially inflated the values of their assets in connection with distributions to Members (including themselves) (Trustee Motion, ¶¶ 1, 6-8); (b) allegations that the Managing Members attempted through various means (including prioritizing distributions) to enrich themselves at the expense of the Members (Trustee Motion, ¶¶ 1, 16-19, 23); (c) allegations of improprieties in the solicitation of investors (Trustee Motion, ¶¶ 1-2, 14); (d) allegations of self-dealing by the Managing Members

8

in connection with transactions they conducted with the Debtors (Trustee Motion, ¶ 25); and (e) allegations of poor business dealings between the Debtors and an independent company (Trustee Motion, ¶¶ 9-13).[2]

22. The Trustee Motion does not show how any of those allegations relate to the limited business activities in which the Debtors expect to be involved in these chapter 11 cases. In addition, it is not clear from the Trustee Motion whether and to what extent any of their allegations would be legally actionable, much less constitute a ground for "cause" under 11 U.S.C. § 1104(a)(1) if proven. On October 23, 2019, the Debtors served on the SEC interrogatories and document production requests that are intended in part to have the SEC refine and explain their contentions so that the matters required to be adjudicated on the Trustee Motion can be better understood by the Debtors, and where appropriate, addressed and refuted. The SEC is expected to respond to those interrogatory and document production requests by the deadline of November 8, 2019. For the time being, the Debtors deny each of the allegations, and otherwise assert that none of them constitutes "cause" under the statute for the appointment of a trustee.

23. None of those categories of allegations, and none of those specific allegations, assuming for the sake of argument they could be proven, can have any effect on the limited business of the post-petition Debtors as set forth above. If asset values must be determined for any purpose, they will be assessed by a process overseen and approved by the Court. No distributions will be made without Court approval. No investments will be solicited. No material transactions will be conducted with non-debtor parties without prior Court approval.

---

[2] The Trustee Motion also complains in the recitation of "cause" allegations that some investors were discontent (and in some cases sought redemptions that were refused (though there is no allegation that any investor had any legal right to any redemption which was refused, and, in fact, no such right existed)), and that Messrs. Hull and Nohl lived "lavish lifestyles." These items are linked with innuendo that the investors seeking redemptions were turned down so that Hull and Nohl could benefit themselves. If Hull and Nohl were entitled to the distributions they took, the fact that they lived "lavishly" or refused redemptions that the Debtors were not obligated to provide cannot constitute "cause" for the appointment of a trustee within the meaning of the statute.

24. Furthermore, assuming for the sake of argument that some of the SEC's allegations could be proven, and had more than a merely tangential relationship to the chapter 11 cases, courts construing § 1104(a)(1) have shown high levels of tolerance for many of the types of pre-petition behavior alleged by the SEC to have occurred in the past, recognizing that perfect management is nearly impossible, and that management missteps and mistakes are the norm for companies that find their way to chapter 11, especially where debtors have taken steps to correct past missteps, or as here, to limit their activities in chapter 11 in a manner that makes the conduct at issue in the past irrelevant to the present.

25. For example, in the case of *In re Sundale, Ltd.*, 400 B.R. 890, 907 (Bankr. S.D. Fla. 2009), creditors sought appointment of a trustee on the ground that the debtor's pre-petition operation of a hotel constituted gross mismanagement or fraud. *Sundale*, 400 B.R. at 901. The creditors asserted that the debtor's manager had a total disregard for corporate formalities between related entities he controlled, failed to pay real and personal property taxes on behalf of the debtor, failed to transfer a liquor license to the appropriate operating entity, that the hotel's profit record was abysmal, and that the debtor was in conflict with the hotel's franchisor. *Id*. The creditors also argued that their total lack of confidence in the debtor's management warranted appointment of a trustee. *Id*.

26. The court found that while the creditors raised legitimate concerns regarding the manner in which the hotel was managed and that better management decisions could have been made by the debtor, the debtor's management had taken many steps to correct its pre-petition mistakes, the hotel was receiving high ratings and the debtor's management was making up operating shortfalls. *Id*. While the Court found that there were missteps by the debtor, it also weighed the fact that the case was moving forward and that the debtor's ability to reorganize could

10

Case 19-29613-gmh    Doc 61    Filed 11/01/19    Page 10 of 14

be tested through the plan confirmation process. *Id*. at 908. The court thus held that the moving creditors did not meet their burden of showing that appointment of a trustee was mandated by Section 1104(a)(1). *Id.* at 902.

27. In *Tanglewood Farms*, the debtor operated a grain storage facility. The debtor's manager admitted that prior to the commencement of the bankruptcy case he sold grain which did not belong to the debtor, and further admitted that he opened a bank account in the name of a separate business entity through which he took the proceeds of the debtor's sales so that he could divert the proceeds away from the debtor's secured creditors. *In re Tanglewood Farms, Inc.*¸ 2011 Bankr. LEXIS at *3. However, after filing chapter 11, the debtor's management closed that bank account and ceased selling grain through the non-debtor entity. *Id.* The court denied the bankruptcy administrator's emergency motion to appoint a chapter 11 trustee, finding that in the circumstances the debtor's pre-petition conduct did not rise to the level of gross mismanagement or fraud which would have warranted the appointment of a chapter 11 trustee. *Id.*

28. In sum, the SEC's contested allegations are not sufficient "cause" for the appointment of a trustee within the meaning of § 1104(a)(1), and even if any could be proven would be insufficiently related to the limited business being conducted under judicial oversight in chapter 11 to constitute such "cause." For either reason the Trustee Motion should be denied.

**B. THE SEC HAS NOT PROVED, AND CANNOT PROVE, THAT THE APPOINTMENT OF A TRUSTEE IS IN THE INTERESTS OF CREDITORS, ANY EQUITY SECURITY HOLDERS, AND OTHER INTERESTS OF THE ESTATE**

29. The second prong of Section 1104(a) "envisions a flexible standard…giving discretion to appoint a trustee 'when to do so would serve the parties' and estates' interests.'" *In re Marvel Entertainment Group,* 140 F.3d 463, 474 (3rd Cir. 1998). Under subsection (a)(2), courts may utilize, among other things, "a cost-benefit analysis and general principles of equity to

11

Case 19-29613-gmh    Doc 61    Filed 11/01/19    Page 11 of 14

determine whether appointment of a trustee is in the best interest of the estate and all the constituents involved." *In re Bergeron*, 2013 Bankr. LEXIS at *35-36.

30. The Trustee Motion fails to show how the appointment of a trustee would be in the best interests of any party other than the SEC, nor does it show that there would be any benefits to be gained by such an appointment, or how any such benefits would outweigh the detriment to the bankruptcy estate. Here, in considering whether the appointment of a trustee is in the best interests of the Debtors' creditors, equity holders, and other parties in interest, it is important to take into account the unique nature of the Debtors' assets and the Debtors' efforts currently in progress to sell assets for the benefit of the estates and parties in interest. *See In re RMS Titanic, Inc.*, 2018 Bankr. LEXIS 2094* (Bankr. M.D. Fl. June 29, 2018).

31. The SEC asserts that the Debtors' investors lack confidence in the Debtors' management. Trustee Motion, ¶ 36. This is based solely on concerns that have been expressed by a few of GPTIF's 142 Members, and therefore does not support the broad implication that many, or even, most of the investors have lost confidence. But even if it did, loss of confidence in a debtor's management or acrimony between a debtor and its creditors does not mandate the appointment of a trustee. *Sundale*, 400 B.R. at 909, *citing In re Marvel Entertainment Group*, 140 F.3d at 473. A court may find cause to appoint a trustee for "acrimony" only on a case-by-case basis and only when the "inherent conflicts extend beyond the healthy conflicts that always exist between debtor and creditor." *In re Marvel Entertainment Group,* 140 F.3d at 472-473.

32. Further, the Trustee Motion is inconsistent with the SEC's prior conduct. The SEC has never, in the course of over six years of investigation, attempted to seek an injunction or similar relief against management. It could have done so at any time; the SEC often seeks such interim relief when it files a civil complaint; yet it did not even name the Debtors as defendants, much less

12

Case 19-29613-gmh    Doc 61    Filed 11/01/19    Page 12 of 14

seek such relief when it filed the SEC Civil Action on September 30, 2019. The SEC offers no explanation as to what has changed (a) in the six years since it began its investigation; (b) in the time since SEC staff determined, in May 2019, that they intended to file a Complaint; or (c) in the time since the SEC Civil Case was filed. The Court should be highly skeptical that the appointment of a trustee would be in the best interests of the Debtors given the SEC's complete lack of alacrity in reaching that conclusion itself.

33. The SEC also argued at a status conference held before this Court on October 17, 2019 that a trustee should be appointed because there may be estate avoidance actions to be pursued against the Managing Members, and that the Managing Members would be conflicted from recommending actions against themselves. There are two answers to that alleged concern, either of which defeats the argument that it would be cause for the appointment of a chapter 11 trustee under § 1104(a)(2). First, if the Debtors succeed in raising the funds they anticipate from asset sales and are able to meet their objective of confirming one or more plans providing for distributions of 100% of allowed claims, there may not be any avoidance actions to bring. Defendants in avoidance actions receive allowed claims equal to any amounts that the estates recover from them. It would thus be pointless (and wasteful) to bring avoidance actions in a full payment case. Second, it is quite common for there to be potential avoidance actions in chapter 11 cases against debtor management and insiders. This is typically handled by assignment of the claims to a creditors' committee, or to a post-confirmation trust or other device which removes the potential conflict. The Debtors have a responsibility to pursue viable avoidance actions and will take steps to preserve them if need be.

34. As discussed at the outset of this Objection, given the limited scope of these cases, and the indispensable role that the Managing Members have in achieving the Debtors' objectives

13

in these cases, the appointment of a trustee would not only fail to yield any benefit to the estates, but could be economically disastrous by adding administrative expenses and damaging the Debtors' ability to sell assets at the highest values, losing potentially millions of dollars. The potential expenses and asset sale losses from such an appointment could also destroy the Debtors' ability to reorganize, and leave them with no choice but to liquidate their businesses. The Trustee Motion thus fails to sustain the SEC's burden to prove any basis for a finding that the appointment of a chapter 11 trustee under § 1104(a)(2) would be in the interests of creditors, investor-Members, or the estates. To the contrary, appointment of a trustee would be squarely against all such interests.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Debtors Greenpoint Tactical Income Fund LLC and GP Rare Earth Trading Account LLC respectfully request that this Court enter an order denying the Trustee Motion and granting such other and further relief as the Court deems appropriate.

Dated this 1st day of November 2019.

                        **STEINHILBER SWANSON LLP**
                        *Attorneys for the Debtors*

      By:   */s/ Michael P. Richman*
            Michael P. Richman
            Claire Ann Richman
            122 W Washington Ave, Suite 850
            Madison, WI 53703
            TEL:   (608) 630-8990/FAX: (608) 630-8991