THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: February 21, 2020



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Greenpoint Tactical Income Fund LLC, and         Case No. 19-29613-gmh

GP Rare Earth Trading Account LLC,               Case No. 19-29617-gmh

Jointly Administered Debtors.                    Chapter 11
                                                 (Jointly Administered
                                                 Under Case No. 19-29613)

### DECISION AND ORDER GRANTING MOTION TO
### REJECT SETTLEMENT AGREEMENT WITH ERICK J. HALLICK

Debtors Greenpoint Tactical Income Fund LLC and GP Rare Earth Trading Account LLC move to reject a settlement agreement with Erick J. Hallick under §365(a) of the Bankruptcy Code. Section 365(a) provides, ignoring inapplicable exceptions, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). As debtors in possession, the debtors "have all the rights . . . and powers . . . of a trustee", again ignoring inapplicable exceptions, so may reject executory contracts under §365(a). *Id.* §1107(a).

Hallick opposes the motion. He contends that the settlement agreement is not an executory contract to which §365(a) applies.

I

The Bankruptcy Code does not define "executory contract." The Seventh Circuit filled that gap in *In re Streets & Beard Farm Partnership*: "Congress intended § 365 to apply to contracts where significant unperformed obligations remain on both sides." 882 F.2d 233, 235 (7th Cir. 1989). Put differently, an "executory contract" is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973), cited in *Streets & Beard Farm*, 882 F.2d at 235. To determine "the significance of the remaining obligations under a contract" a court looks to the nonbankruptcy law that governs it. *Streets & Beard Farm*, 882 F.2d at 235. The settlement agreement at issue here, which resolved litigation pending in a Wisconsin court, expressly provides that it is "governed by the law of the State of Wisconsin." See ECF No. 198, at 1 & 5. Thus, the court looks to Wisconsin law.

Under Wisconsin law, "[w]hether or not the breach of a contract . . . is . . . so material as to justify the [non-breaching party] in refusing to proceed further, is a question of fact." *Kieckhefer Box Co. v. John Strange Paper Co.*, 193 N.W. 487, 494 (Wis. 1923). But see *Volvo Trucks N. Am. v. Wis. Dept. of Transp.*, 779 N.W.2d 423, 433 & nn.28 & 29 (Wis. 2010) (whether a breach is material "may be viewed as a question of law" if "only one conclusion is to be drawn from the facts"). For a breach by one party to justify the other's refusal to proceed further—i.e., to excuse the subsequent performance of the non-breaching party—the breach "must be so serious . . . as to destroy the essential objects of the contract." *Appleton St. Bank v. Lee*, 148 N.W.2d 1, 3 (Wis. 1967); see also *Mgt. Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 77–78 (Wis. 1996).

II

Two questions must be answered. Do both the debtors and Hallick have unperformed obligations under the settlement agreement? If so, would the failure to perform those obligations constitute a material breach of that agreement?

A

No one contests that the debtors have unperformed material obligations under the settlement agreement. In executing the agreement, the debtors (and others) principally agreed that they would pay Hallick a total of $14 million by July 21, 2019, and that, if they did not timely pay him, Hallick would be entitled to take possession of gems or mineral assets, or both, of Greenpoint Tactical Income Fund worth $15 million, less any amounts they had paid him under the agreement. The debtors have not paid Hallick or distributed sufficient assets to him to satisfy the terms of the settlement agreement, so their material obligations under the agreement remain unperformed.

The issue, then, is whether Hallick has any unperformed material obligations under the settlement agreement. The agreement requires Hallick, "[u]pon full satisfaction of [its] terms", to "assign and transfer all of his ownership interests in each of the Greenpoint Funds back to each respective Fund." ECF No. 198, at 3. The transfer of Hallick's interests in the funds is undoubtedly an essential object of the agreement: as Hallick explains, the litigation that the agreement resolved arose after Hallick tried (and failed) to liquidate his interests in the funds. ECF No. 254, at 4, ¶12. And, had Hallick announced that, even upon full satisfaction of the agreement's terms, he would not transfer his interests in the funds, his anticipatory breach would have justified the other parties, including the debtors, in refusing to pay him or otherwise perform. See, e.g., *Morn v. Schalk*, 111 N.W.2d 80, 84 (Wis. 1961); *Rottman v. Endejan*, 94 N.W.2d 596, 601 (Wis. 1959); *Amberg Granite Co. v. Marinette County*, 18 N.W.2d 496, 498 (Wis. 1945). Accordingly, Hallick's obligation to transfer his interests in the funds upon satisfaction

of the agreement's terms is a material obligation under the agreement. That obligation, like the debtors' material obligations under the agreement, remains unperformed.

B

Hallick argues that, under the doctrine of equitable conversion, the transfer of his interests in the funds is "a mere formality" and his obligation to transfer those interests is not "the kind of significant legal obligation that would render the Settlement Agreement an executory contract." ECF No. 254, at 6.

This argument fails from the start because the doctrine of equitable conversion does not apply here. "The doctrine of equitable conversion is really a fiction by which, for certain purposes, the most frequent of which is to carry out the purpose of a testator, realty will be treated as personalty." *Foote v. Foote (In re Foote's Will)*, 149 N.W. 738, 739, 739 (Wis. 1914); see also W. Lawrence Church, *Equitable Conversion in Wisconsin*, 1970 Wis. L. Rev. 404, 405 ("In its classic formulation, [the doctrine] purports to determine on a systematic basis the nature of the interest of a vendor and a vendee in real property which is the subject of a land contract." (Footnotes omitted.)). "Generally speaking, in [Wisconsin] this doctrine has been given sharply limited applicability, most often to carry out the will of a testator" and "in cases of uncompleted sales of real estate to carry out the intention of the parties which otherwise would have been prevented by death, laws or descent or destruction of the property." *Anderson v. Nelson*, 157 N.W.2d 655, 660 (Wis. 1968) (footnotes omitted). Applying the doctrine in a case, like this one, that involves no realty—and, thus, no potentially thwarted attempt or intent to devise, sell, or otherwise transfer real property—requires giving the doctrine an indefinitely expansive applicability clearly contrary to its nature and Wisconsin caselaw.

Even if the doctrine of equitable conversion applied more broadly, by analogy to land-sale contracts, as Hallick suggests, it would not apply here. The doctrine applies, as a matter of "land contract law", because under "an ordinary land contract", while "the vendor holds legal title to the property", the vendee is generally "regarded as the

real owner" and "has full rights over the land from the date of the contract". *City of Milwaukee v. Greenberg*, 471 N.W.2d 33, 36 (Wis. 1991) (quoting *Williams v. Neeves*, 69 N.W. 806, 809 (Wis. 1897)). The vendor is deemed to hold the title "in trust for the vendee, subject to the payment of the purchase money". *Williams*, 69 N.W. at 809. The agreement at issue here is not comparable to such a contract: it does not effectuate, or even require, Hallick's surrender of his rights as an owner of the funds, except upon full satisfaction of the agreement's terms by the other parties, including the debtors, and it does not provide, or even suggest, that Hallick retains his interests in the funds merely as security for the distribution of cash or assets under the agreement.

Hallick's brief states that he "retains virtually no ownership rights in his interests." ECF No. 254, at 8. In support of this contention, the brief asserts that since entering into the settlement agreement "he has not voted on Greenpoint Funds matters", "he has not received notice of any Greenpoint Funds member meetings" or "annual performance statements for any period after the Settlement Agreement was entered into", and he has not "received any distributions on account of his interests in the Greenpoint Funds." *Id.* These assertions are not supported by evidence—in fact, Hallick's supporting declaration makes no mention of them—and even if they were, they are irrelevant. The settlement agreement does not limit Hallick's rights as an owner of the funds or vest those rights in anyone else, and the funds' failure (if any) to afford him those rights does not change the fact that he has them.

Hallick's brief also states that he "cannot sell or liquidate his investment in any of the Greenpoint Funds to anyone else, because he has already committed to transfer his ownership per the terms of the Settlement Agreement." *Id.* at 8–9. Hallick is correct, but this concession sinks his opposition to the debtors' motion. Were he to sell or liquidate his interests in the funds other than under the settlement agreement, he would disable himself from performing his obligation under the agreement to transfer those interests to the funds. Such conduct would be "a definite and unequivocal manifestation of

intention" on his part to "not render the promised performance when the time fixed for it in the contract arrives", otherwise called "an anticipatory breach of contract". *Wisconsin Dairy Fresh, Inc. v. Steel & Tube Prod. Co.*, 122 N.W.2d 361, 367 (Wis. 1963). The possibility of such a breach exists only because the agreement imposes a material duty on Hallick that he has yet to perform, making the agreement an executory contract.

III

For these reasons, it is ordered that the debtors' motion to reject the Hallick settlement agreement is **granted**.

#####