So Ordered.

Dated: March 30, 2021



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

In re:

Greenpoint Tactical Income Fund LLC, and     Case No. 19-29613-gmh
GP Rare Earth Trading Account LLC,     Case No. 19-29617-gmh

Jointly Administered Debtors.     Chapter 11
   (Jointly Administered
   Under Case No. 19-29613)

_____

**DECISION AND ORDER DENYING
(1) ERICK HALLICK'S MOTION FOR DETERMINATION THAT THE
AUTOMATIC STAY DOES NOT APPLY TO NON-DEBTORS, OR
ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY
AND
(2) DEBTORS' COUNTERMOTION TO TEMPORARILY EXTEND THE
AUTOMATIC STAY TO HALLICK'S PROSPECTIVE LITIGATION AGAINST
DEBTOR'S INSIDERS UNTIL CONCLUSION OF PLAN CONFIRMATION**

_____

Erick Hallick filed a "motion for a determination that the automatic stay does not apply to non-debtors, or alternatively, for relief from the automatic stay". ECF No. 483. The debtors responded by filing a combined objection and countermotion to

temporarily extend the automatic stay to Hallick's contemplated continuation of litigation against the debtors' insiders until after the court decides whether to confirm their plan of reorganization. ECF No. 503. Both motions will be denied.

I

In 2017 Hallick sued the debtors and others in a Wisconsin circuit court. The parties agreed to arbitrate. Hallick filed an arbitration complaint against Greenpoint Tactical Income Fund, its Managing Members, GP Rare Earth, and other individuals and entities (collectively, "respondents"). Following mediation Hallick and the respondents agreed to settle most of the dispute, including Hallick's claims against the debtors. The settlement was memorialized in an agreement that provides, among other things, that respondents would make two payments to Hallick totaling $14 million by July 21, 2019, or be required to transfer up to $15 million of assets to Hallick, described by the agreement as "the gem and/or mineral assets of the GTIF", which the agreement defined as Greenpoint Tactical Income Fund. ECF No. 198, at 1–2.

The respondents didn't pay the $14 million nor did they transfer gem or mineral assets to Hallick. Before Hallick could compel the transfer of the gems and minerals (which are assets of debtor GP Rare Earth), the debtors filed for bankruptcy and rejected the settlement agreement.

Hallick filed proofs of claim against both debtors in the bankruptcy cases. His claim in the Greenpoint Tactical Income Fund case is for $15 million, stating that the claim is based on the "settlement agreement." Case No. 19-29613, Claim 6-1. His claim in the GP Rare Earth case is for $13,625,000 allegedly for "breach of settlement agreement per its rejection". Case No. 19-29617, Claim 11-1.

II

In support of his request that this court opine on the application of the stay to his contemplated continuation of the arbitration, Hallick reports that after the debtors commenced their bankruptcy cases "the Arbitrator determined that he would not make any further rulings with respect to the Non-Debtors until further order from this Court was obtained clarifying the impact of the automatic stay on the arbitration." ECF No. 483, at 5. Hallick says he seeks to continue the arbitration proceeding by asking the arbitrator to afford him relief against the non-debtor respondents for breach of the settlement agreement. To that end, he moves this court for "confirmation that the automatic stay of Section 362 of the Bankruptcy Code does not preclude him from pursuing a breach of contract claim against the Non-Debtors, or alternatively, that there is 'cause' to lift the stay and order that Mr. Hallick may proceed with the Arbitrator against the Non-Debtors." ECF No. 483, at 5. Hallick does not ask for relief from the §362(a) stay to continue the arbitration against the debtors.

A

Hallick's motion identifies no statute or rule that authorizes his request for a declaration that continuing the arbitration proceedings against the non-debtor respondents will not violate the automatic stay. Federal courts have refrained from issuing advisory opinions since the dawn of the Republic. See *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."), and *Deveraux v. Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) ("The 'case or controversy' requirement . . . keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action."); see also 3 Correspondence and Public Papers of John Jay 486–489 (H. Johnston ed. 1890–1893). Perhaps Congress can authorize bankruptcy courts to advise on the applicability of the §362(a) stay to possible future conduct in the abstract. See 11 U.S.C. §362(j); but see

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016). But other than §362(j), which does not apply here, Congress has not directed bankruptcy courts to enter the type of order Hallick seeks. If this court has the authority to grant such declaratory relief, the authority rests either in §105(a), as Hallick argues, or whatever implicit authority the court may otherwise utilize. In either case use of the authority is unquestionably discretionary. See 11 U.S.C. §105(a) ("The court *may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.") (Emphasis added).

Section 362 provides generally that the filing of a bankruptcy case stays certain actions against debtors and their estates. More specifically, §362(a)(1) stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title". And §362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title". So, while it is generally true that the automatic stay does not apply to non-debtors, whether Hallick's purposed continuation of the arbitration proceeding to, as he casts it, pursue breach of contract claims against the non-debtor respondents will offend the §362(a) stay is best not determined in the abstract. If he continues the arbitration and the debtors move to enforce the §362(a) stay, there will be a concrete controversy ripe for resolution. In the absence of such a controversy, the court declines Hallick's invitation to opine on the stay's potential application to possible future circumstances. For these same reasons, the court declines Hallick's invitation (advanced in his objection to the debtor's countermotion) to enter "an order stating that the automatic stay never came into effect regarding his breach of contract claims against the Non-Debtors". ECF No. 544, at 12.

B

Hallick alternatively requests that the court grant him relief from the automatic stay under §362(d)(1) to allow him to "proceed" against the non-debtor respondents, including the debtors' managing members, "with the Arbitrator." ECF No. 483, at 14. Hallick does not explained how his intended course of conduct is prohibited by the §362(a) stay—his position, as explained above, is that the stay *doesn't* apply to whatever continued arbitration proceedings he foresees. This dooms his request for relief under §362(d)(1).

Determining whether there is "cause" to grant relief from the stay—the §362(d)(1) touchstone—requires the court to consider in part the effect on the administration of the bankruptcy estate of allowing otherwise prohibited conduct. This determination necessarily requires the court to consider the stayed conduct—conduct that Hallick describes only vaguely: "to permit Mr. Hallick to prosecute his claims against the Non-Debtors with Arbitrator." *Id.* at 10. What does this prosecution involve? Hallick does not explain, other than to state that the claims he seeks to allege are breach of contract claims, and to argue that the arbitrator will determine the impact of the breach of the settlement agreement on the non-debtor respondents. ECF No. 544, at 3 & 12–13.

In addition to showing that he seeks to act in a manner that is prohibited by §362(a), Hallick must show that the action's benefits predominate over any negative effects on administration of the bankruptcy case. Hallick has not made this showing. His request for relief under §362(d) is little more than a restyling of his request for an advisory opinion that he may undertake "prosecuting his claims against the Non-Debtors with the Arbitrator"—whatever that might entail—without risk of violating the §362(a) stay. ECF No. 483, at 10. His request fares no better in different dress.

III

The debtors, in addition to opposing Hallick's requests for relief, ask the court to "[e]xtend[] the automatic stay to include any prospective litigation" against the debtors' managing members, Michael Hull, and Christopher Nohl. ECF No. 503, at 3 & 14. Section 362 doesn't authorize the court to stay conduct beyond that to which §362(a) applies. And, while the bankruptcy court has the authority to enjoin conduct that interferes with the administration of the bankruptcy case, see §105(a) and *Caesars Ent. Operating Co., Inc. v. BOKF, N.A. (In re Caesars Ent. Operating Co., Inc.),* 808 F.3d 1186, 1188–89 (7th Cir. 2015), the debtors' motion for injunctive relief is procedurally improper. See Fed. R. Bankr. P. 7001(7) (proceedings to obtain injunctions are adversary proceedings unless provided for in a plan of reorganization).

IV

For these reasons, it is ordered that the following are denied:

1. Erick Hallick's motion for a determination that the automatic stay does not apply to non-debtors, or alternatively, for relief from the automatic stay. ECF No. 483.
2. The debtors' countermotion to temporarily extend the automatic stay to Hallick's prospective litigation against debtors' insiders until conclusion of plan confirmation. ECF No. 503.

# # # # #