So Ordered.

Dated: February 16, 2022



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| Greenpoint Tactical Income Fund LLC, and | Case No. 19-29613-gmh |
| GP Rare Earth Trading Account LLC, | Case No. 19-29617-gmh |
| Jointly Administered Debtors. | Chapter 11 (Jointly Administered Under Case No. 19-29613) |

**DECISION AND ORDER**

On February 3, 2020, Erick Hallick filed proofs of class A equity interests in debtor Greenpoint Tactical Income Fund LLC ("GTIF"), some of which he holds in his own name and some of which are held by an IRA (together, the "Interests").[1] GTIF objects to the Interests, principally requesting that the court disallow them in their entirety.

---

[1] The parties treat as immaterial the fact that some of the Interests are owned by Hallick individually and others are owned by an IRA held by Hallick. This order follows suit and, for ease of explication, disregards the distinction. Any issues or arguments based on the IRA's ownership are deemed forfeited.

I

GTIF's objection seeks disallowance of the Interests as a matter of law based on the following facts, which are either uncontested, subject to judicial notice, or both. See Fed. R. Civ. P. 56(a) made applicable here by Fed. R. Bankr. P. 9014(c) & 7056.

Hallick, in addition to owning the Interests in GTIF, owned membership interests in several funds that are related to GTIF. In 2018 he commenced an arbitration against those entities and others (collectively "Respondents"), including GTIF and debtor GP Rare Earth Trading Account LLC. He generally alleged that the funds' managers had misled him into investing in funds that allowed the managers to profit at the investors' expense. His arbitration complaint contained 16 counts, most of which were pleaded collectively against the funds and their managers, including securities fraud, tortious misrepresentation, breach of fiduciary duty, breach of contract, and negligence. ECF No. 795-1, at 33–88. Hallick's claim for securities fraud under Wis. Stat. §551.509 sought to recover the consideration he paid for his interests in the funds, and he separately pleaded a count for rescission of his membership interests in each of the funds of which he was a member, including GTIF. ECF No. 795-1, at 66–68 & 82–83.

Hallick and the Respondents settled the arbitration before trial.[2] Their settlement agreement states that it is intended "to resolve all claims asserted by Hallick against Respondents", except for some claims that are irrelevant to the current dispute. ECF No. 198, at 1, Recital D. In exchange for a release of Hallick's claims, the agreement required the Respondents collectively to pay Hallick $14 million or, alternatively, required GTIF to transfer $15 million worth of gem and mineral assets to him. *Id.* at 1–4. The agreement also required Hallick to surrender his interests in the funds after receiving full payment, stating, "[u]pon full satisfaction of the terms set forth herein, Hallick shall

---

[2] Hallick's arbitration complaint named Teresa Esser and Mittelstand Fund LLC as respondents, but they were not parties to the subsequent settlement. This immaterial nuance is ignored.

assign and transfer all of his ownership interests in each of the Greenpoint Funds back to each respective Fund."[3] *Id.* at 3, ¶6.

The Respondents failed to make good on their promise to pay in cash or kind. But before Hallick could enforce the agreement, the debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. Those filings stayed Hallick's ability to collect from the debtors, see 11 U.S.C. §362(a), and the debtors rejected the settlement agreement under §365(a) of the Bankruptcy Code. See ECF No. 297. (Unless otherwise noted, this decision's references to statutory provisions are to the Bankruptcy Code, title 11 of the United States Code.)

Hallick filed proofs of interests in GTIF's bankruptcy case. He also filed proofs of claim against both debtors for breach of the settlement agreement. This court subsequently ruled that Hallick's claims are subordinated to other claims and interests under §510(b) because they seek damages "arising from the purchase or sale of [ ] a security" "of the debtor or an affiliate of the debtor".[4] See *Greenpoint Tactical Income Fund LLC v. Hallick*, Adv. Proc. No. 20-2102, ECF Nos. 34–35 & 50.

After the debtors rejected the settlement agreement, Hallick filed a new statement of claim in the arbitration seeking damages against the non-debtor Respondents for breach of that agreement. ECF No. 1071-1. The arbitrator granted the requested relief and awarded Hallick damages of $13,625,000 against the non-debtor Respondents jointly and severally for breaching the settlement agreement. ECF No.

---

[3] The settlement agreement does not define the term "Greenpoint Funds". Presumably it refers to each of the Respondent funds in which Hallick held an ownership interest.

[4] The debtors now emphasize that Hallick's arbitration complaint requested rescission of his Interests and alleged a tendering of those Interests. In requesting subordination of Hallick's bankruptcy claims under §510(b), however, the debtors argued only that Hallick's claims were "for damages arising from the purchase or sale of [ ] a security" of the debtor or an affiliate. The debtors did not contend that Hallick's claims were subordinated under §510(b) as ones "arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor", and the court did not address that issue. See *Greenpoint Tactical Income Fund LLC v. Hallick*, Adv. Proc. No. 20-2102, ECF Nos. 19, 30, 34–35 & 50.

1071-2. The Dane County Circuit Court entered a judgment confirming the award on April 29, 2021. ECF No. 1071-3.

II

Hallick contends that he is an "equity security holder" under the Bankruptcy Code because he is the "holder of an equity security of the debtor." §101(17); see also §101(16)(A) ("equity security" "means [a] share in a corporation . . . or similar security") and Wis. Stat. §183.0801 (acquisition of interests in limited liability company). Section 501(a) provides that "[a]n equity security holder may file a proof of interest." Section 502(a), in turn, governs allowance of interests, providing, an "interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." §502(a).

GTIF objects to the Interests contending that by operation of nonbankruptcy law "Hallick's equity interest in [GTIF] has been extinguished" and "Hallick no longer holds any equity interest in [GTIF]". ECF No. 1071, at 7.

A

GTIF does not dispute that Hallick purchased equity interests in GTIF, nor does it suggest that he transferred them. GTIF instead asserts that nonbankruptcy law defeats Hallick's status as an equity interest holder or defeats his ability to benefit from that status. GTIF's reasoning begins by observing that Hallick's 2018 arbitration complaint made a claim under Wisconsin securities law, Wis. Stat. §551.509, and requested recession of his Interests. GTIF contends that when Hallick requested rescission he was "required to tender his securities back to the defendant [GTIF] as a condition precedent to recovery." ECF No. 1071, at 6 (citing Wis. Stat. §551.509(2)(a)). And, GTIF observes, Hallick's arbitration complaint pleaded that "[p]ursuant to Wis. Stat. § 551.509(2) and (7), Hallick hereby tenders" his ownership interests in GTIF. ECF No. 1071, at 6 (quotation omitted).

Section 551.509(2), Wis. Stat., to which Hallick's pleading refers, governs the liability of securities sellers to their purchasers and states that a "purchaser may maintain an action to recover the consideration paid for the security . . . **upon the tender of the security**, or for actual damages . . . ." Wis. Stat. §551.509(2)(a) (emphasis added). "Tender", GTIF argues, "means 'an unconditional offer of money or performance to satisfy a debt or obligation.'" ECF No. 1071, at 6 (quoting Black's Law Dictionary (11th ed. 2019)). Based on this, GTIF initially seems to suggest that Hallick's request for rescission and accompanying tender of his interests in his arbitration complaint entail that Hallick may no longer benefit from his equity interests by operation of nonbankruptcy law.

That's incorrect, however. The required tender is an *offer* to surrender the interests in exchange for an award of restitution. See *Kronenberg v. Katz*, 872 A.2d 568, 602 (Del. Ch. 2004) ("It is clear . . . that rescission can be ordered so long as the plaintiffs have offered to return their membership interests upon entry of an order of rescission.").[5] Not until that offer is accepted—either voluntarily by the issuer agreeing to settle the claim or involuntarily by the entry of a restitution award against the issuer—is the claimant divested of his interest. GTIF has not identified any provision of Wis. Stat. §551.509 or any governing equitable principle that supports ruling that Hallick's tendering of his interests to plead a request for restitution divested him of those interests before or even in the absence of any restitution award.

The arbitrator never awarded recission. Hallick and the Respondents, including GTIF, settled Hallick's arbitration claims. Their settlement agreement acknowledged that Hallick retained his equity interests, and it required him to transfer those interests

---

[5] Wisconsin law, which presumably governs the relationship between GTIF and Hallick, lacks a robust explication of many of the disputed issues. Consequently, this decision at times relies on rulings applying equitable principles from other states' common law, as well as the Restatement (Third) of Restitution and Unjust Enrichment. In doing so, this decision presumes that the Wisconsin Supreme Court would construe Wisconsin law similarly.

to the issuers only after the Respondents paid Hallick in cash or kind. As noted above, the settlement agreement states, "[u]pon full satisfaction of the terms set forth herein, Hallick shall assign and transfer all of his ownership interests in each of the Greenpoint Funds back to each respective Fund. Such transfer by Hallick shall be of good title, free and clear of all encumbrances, and in a form of transfer document acceptable to the Respondents." ECF No. 198, at 3, ¶6. So, under the express terms of the settlement agreement, Hallick retained his interests in the funds, including in GTIF. The settlement agreement obligated him to transfer those interests to the issuing Respondents only after they paid him in full, which they never did.

B

Ultimately, GTIF does not dispute any of this. It instead sees relevance in the fact that Hallick has obtained a $13 million judgment for breach of the settlement agreement against the non-debtor Respondents. GTIF argues that the arbitrator's award of damages against the non-debtor Respondents for breach of the settlement agreement constitutes an "acceptance" of Hallick's tender in the arbitration complaint:

> Hallick sought rescission damages and settled his claims for an amount measured by the consideration paid for his equity interests. . . . **When the Arbitrator awarded Hallick the full amount due under the Settlement Agreement, and the Circuit Court entered judgment confirming the Arbitration Award, Hallick's tender was effectively accepted**, and his equity interests should be held to have been exchanged for judgments against the Non-Debtor Respondents. . . . When Hallick obtained a judgment in his favor, and received an award measured in part by rescission damages which were embedded in the settlement, it had the effect of a judicially mandated acceptance of that offer.

ECF No. 1094, at 5 (emphasis added).

GTIF's effort to infer a divesting of Hallick's equity interests in debtor GTIF from entry of a judgment against non-debtors for breach of the settlement agreement is difficult to understand. The arbitration award—and the judgment confirming that award—is for breach of contract (the settlement agreement), not for a violation of Wis.

Stat. §551.509 or for rescission. Hallick settled his Wis. Stat. §551.509 and rescission claims; he released them in exchange for a promise to pay him in cash or kind. Nothing in Wis. Stat. §551.509 divests Hallick of his Interests under those circumstances, and GTIF does not contend otherwise.

The general principle that underlies equitable rescission—that parties cannot have their cake and eat it too—also does not apply under these circumstances. "Rescission requires a mutual restoration and accounting in which each party [ ] restores property received from the other, to the extent such restoration is feasible . . . ." See Restatement (Third) of Restitution and Unjust Enrichment §54(2)(a) (2011). Hallick's pursuit of breach of contract damages against the non-debtor Respondents does not fit this paradigm. Hallick's award is based on the non-debtor Respondents' failure to pay Hallick the amount promised in the settlement agreement. The award is calculated to put Hallick in the economic position he would have been in had the Respondents abided by the terms of the settlement agreement. It is not calculated as the amount Hallick is entitled to receive in return for an unwinding of the transactions in which he acquired his equity interests from non-debtor Respondents and GTIF alike. Even if the context of the award didn't make this obvious, its text does: "The issue now is Mr. Hallick's right, if any, under the [Settlement] Agreement, to pursue the [non-debtor] respondents for the amount he is owed under the Settlement Agreement." ECF No. 1071-2, at 7. The arbitrator concluded, "each of the [non-debtor] respondents is jointly and severally liable for the $13,625,000 obligation each agreed to assume by entering into the [Settlement] Agreement. They have each breached the [Settlement] Agreement by not paying." *Id.* at 14.

Beyond all this, the arbitrator did not award damages against GTIF *at all*; so, the award cannot be conceptualized as undoing Hallick's purchase of interests in GTIF and working a "mutual restoration". Restatement (Third) of Restitution and Unjust Enrichment §54(2). And neither the arbitrator's decision and order nor the circuit

court's judgment confirming the award purport to divest Hallick of his interests in GTIF or any other Respondent. The confirmed award thus bears no apparent connection to Hallick's continued ownership of equity interests in GTIF.

GTIF's reply memorandum suggests the court should infer a connection between the award and Hallick's equity interests because the settlement agreement "was premised" on Hallick's alleged right to rescission, among other claims. ECF No. 1094, at 4. GTIF argues that the confirmed award entitles "Hallick [to] damages for the breach of a Settlement Agreement which was itself premised in part upon the rescission of those interests which were required upon payment to be surrendered". *Id*. at 1–2.

What GTIF means by this is also unclear. The settlement agreement was "premised" on Hallick's release of the many claims he asserted in the arbitration. The arbitrator's award of damages against the *non-debtor* Respondents for breaching the settlement agreement by failing to pay Hallick has no legal or logical connection to rescission of Hallick's interests in *debtor* GTIF. The arbitrator's award wasn't entered against GTIF, didn't grant rescission under Wis. Stat. §551.509(2), and didn't award restitution damages that could support equitable rescission of anything.

GTIF casts the arbitration award as "tantamount to acceptance of the tender." *Id.* at 5. By this, GTIF apparently seeks to equate the arbitrator's damages award to remedy a breach of the settlement agreement with an acceptance of Hallick's tender of the equity interests in his arbitration complaint. But why is an award of damages against the non-debtor Respondents for breach of the settlement agreement "tantamount to acceptance" of the (settled) arbitration complaint's tender of interests in debtor GTIF? *Id*. Because, answers GTIF, "[w]hen Hallick obtained a judgment in his favor, and received an award measured in part by rescission damages which were embedded in the settlement, it had the effect of a judicially mandated acceptance of that offer." *Id.*

That answer is unpersuasive. Again, the arbitrator awarded Hallick damages equal to the unpaid amount due under the settlement agreement. How the settling

parties arrived at the settlement amount is unknown and likely unknowable. Hallick's arbitration complaint alleged multiple claims, against 18 Respondents, including issuers of interests other than GTIF, and in addition to requesting rescission of his interests in, and dissolution of, the several funds, Hallick's complaint requested an award of damages against the Respondents jointly and severally to compensate for alleged fraud, negligence, breach of contract, breach of fiduciary duty, civil theft, and violation of Wisconsin's organized crime statute; as well as exemplary damages under Wis. Stat. §895.446, punitive damages, and attorney's fees. ECF No. 795-1, at 33–88.

More important, how the parties arrived at the settlement amount is irrelevant. The arbitrator never adjudicated Hallick's rescission claim or awarded restitution (or any other) damages based on the claims in the arbitration complaint. As a result, there is no "judicially mandated acceptance" of Hallick's tender. ECF No. 1094, at 5. Again, neither the arbitrator's award nor the confirming judgment imposes a duty on Hallick to transfer his interests in GTIF or any other entity.

Hallick, as discussed above, did agree as part of the settlement to transfer his interests back to the issuers in return for the settlement amount. But, again, the settlement amount went unpaid. The Respondents' failure to pay was a material breach of the settlement agreement; so too was GTIF's rejection of it. As a result, GTIF cannot now enforce the settlement agreement's transfer provision, either directly or by characterizing the arbitrator's breach-of-settlement-agreement award as "tantamount" to acceptance of a tender asserted as an element of a never-adjudicated restitution claim. *Id.*; see *Mgt. Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 77 (Wis. 1996) ("It is well established that a material breach by one party may excuse subsequent performance by the other.").

## C

### 1

GTIF alternatively argues that Hallick's Interests are "unenforceable" under Wisconsin contract law and under the doctrine of election of remedies. ECF No. 1071, at 7–9. GTIF contends that because Wisconsin contract-law damages serve to put a non-breaching party in the economic position they would have been in but for the breach, Hallick cannot simultaneously retain his equity interests and assert claims against the debtors for breach of the settlement agreement in the full amount due under that agreement. By doing so, contends GTIF, Hallick asserts inconsistent theories of relief that offend the election-of-remedies doctrine.

"The election of remedies doctrine is 'an equitable principle barring one from maintaining inconsistent theories or forms of relief.'" *Wickenhauser v. Lehtinen*, 734 N.W.2d 855, 861 (Wis. 2007) (quoting *Head & Seemann, Inc. v. Gregg*, 311 N.W.2d 667, 668 (Wis. App. 1981), aff'd and adopted, 318 N.W.2d 381, 382 (Wis. 1982)). The doctrine, when it applies, can limit the relief that a claimant can recover "where the remedies sought are inconsistent with one another." *Id.*; see also *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976, 985 (7th Cir. 1978) (The doctrine applies where "a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy." (quoting *Prudential Oil Corp v. Phillips Petroleum Co.*, 418 F. Supp. 254, 257 (S.D.N.Y. 1975))). Notably, "[t]he underlying purpose of the doctrine of election of remedies 'is to prevent double recovery for the same wrong.'" *Wickenhauser*, 734 N.W.2d at 862 (quoting *Head & Seemann, Inc.*, 311 N.W.2d at 669).

The election-of-remedies doctrine, as its name suggests, applies only to limit the relief that courts may award to satisfy a claim. The doctrine is a "shield" that protects defendants in civil litigation against double recoveries. *Id.*; see also *Johnson v. R.S. Const. Co.*, 80 F. Supp. 749, 753 (D. Md. 1948). GTIF, however, attempts to transform the

doctrine into a "sword" capable of depriving Hallick of his Interests, even though GTIF has not paid or been ordered to pay Hallick for the return of those Interests. *Id.* No authority supports this transmogrification.

2

GTIF also suggests that some equitable principle must redress the perceived unfairness resulting from Hallick retaining his equity interests in GTIF while at the same time obtaining a damages judgment against the non-debtor Respondents for the full amount owed under a settlement agreement that obligated Hallick to transfer his interests back to the issuers. But, if there is any unfairness, it appears to be to the detriment of the non-debtor Respondents, who perhaps could have contended in the arbitration that an award of damages for breach of the agreement should have accounted for the value of Hallick's retained interests.

Regardless, there's no unfairness to GTIF. It hasn't paid Hallick any of the amount owed under the settlement agreement nor has any non-debtor Respondent asserted a contribution claim based on paying the breach-of-contract award. As a result, GTIF has not shown that Hallick's pursuit of relief from the non-debtor Respondents limits his rights as an owner of equity interests.[6]

---

[6] Even as to Hallick's claim against GTIF, which is not at issue here, the election-of-remedies doctrine appears inapplicable at present. Hallick's claim against GTIF in the bankruptcy, like his claims against the non-debtor Respondents outside of bankruptcy, is for breach of the settlement agreement; he is not pursuing both his pre-settlement claims for rescission of his ownership interests and damages for the benefits due him under the settlement agreement, which might implicate the election-of-remedies doctrine. See *Wickenhauser*, 734 N.W.2d at 862 ("Therefore, it 'appears that if a claimant chooses to seek rescission [of a contract], he may not sue for damages [based on enforcement of the contract].'" (quoting *Head & Seemann, Inc.*, 311 N.W.2d at 669)). Until Hallick receives full payment—full satisfaction of his judgment against the non-debtor Respondents—the election-of-remedies doctrine presents no obvious bar to his pursuit of the same relief from GTIF. See *Tuchalski v. Moczynski*, 449 N.W.2d 292, 293–94 (Wis. App. 1989). Before then, Hallick's partial recovery from non-debtor Respondents might afford a basis for limiting the amount he can recover on his claims against the debtors, an observation with which Hallick seems to agree. These issues, however, may be left for another day because they have no bearing on allowance of Hallick's Interests.

III

GTIF additionally argues that if the court does not disallow Hallick's Interests, then it should reduce the value of those Interests to Hallick's "Net Invested Capital" as defined in GTIF's second amended chapter 11 plan. ECF No. 1071, at 9–10. Hallick objects to the proposed reduction.

GTIF's reply proposes that adjudication of this issue should await plan confirmation. ECF No. 1094, at 6–7. The court agrees. If Hallick objects to the plan's valuation of his Interests, the court will resolve that dispute in connection with plan confirmation.

IV

For these reasons, IT IS HEREBY ORDERED that GTIF's objection to allowance of Hallick's Interests is overruled without prejudice to GTIF's amended plan of reorganization valuing those Interests in an amount less than stated in Hallick's proofs of interest, subject to Hallick's right to timely object to plan confirmation based on the plan's valuation or treatment of his Interests.

# # # # #