In re:

Greenpoint Tactical Income Fund, LLC n/k/a Alluvium Fund LLC and GP Rare Earth Trading Account LLC,

Jointly Administered Debtors.

Case No. 19-29613-gmh
Case No. 19-29617-gmh

Chapter 11
(Jointly Administered Under Case No. 19-29613)

## REPLY IN SUPPORT OF MOTION TO CLARIFY PLAN OF REORGANIZATION AND CONFIRMATION ORDER

Alluvium Fund LLC f/k/a Greenpoint Tactical Income Fund, LLC and GP Rare Earth Trading Account LLC (collectively, the "*Fund*" or "*Debtor*"),[1] as reorganized debtor, submits this reply in support of its motion (the "*Motion*") for an order clarifying the Modified Third Amended Chapter 11 Plan of Reorganization of Greenpoint Tactical Income Fund LLC (the "*Plan*") and the May 18, 2022 order confirming the Plan (the "*Confirmation Order*"), and, in support, states as follows:

### Brief Background

On November 5, 2025, the Debtor filed the Motion, in an attempt to reconcile what appear to be competing or potentially conflicting provisions in the remedies ruling in the SEC Action (the "*Remedies Ruling*") entered on September 5, 2025 by the District Court for the Western District of Wisconsin and this Court's prior orders, including the Confirmation Order [ECF 1470], which became effective on May 19, 2022 [ECF 1476], and the July 15, 2022 order denying the Debtor's motion to dismiss an adversary proceeding filed by the SEC in which the Court held that only the

---

[1] Any capitalized term not defined herein, shall have the meaning as ascribed in the Motion.

District Court could decide whether the Bankruptcy Court's order allowing the SEC's claim at $0 has any preclusive effect on the District Court. [AP, ECF 38].[2]

On December 2, 2025, Erick Hallick filed his Objection to the Motion of Debtor to Clarify Plan of Reorganization and Confirmation Order [ECF 1746]. On December 4, 2025, Christopher J. Nohl filed a *pro se* Objection and Reservation of Rights to Debtors' Motion to Clarify Plan and Confirmation Order [ECF 1747].

## Discussion

### I.       Objection of Christopher Nohl

Nohl controls Chrysalis Financial LLC ("*Chrysalis*") which, with Greenpoint Asset Management II LLC ("*GAM II*"), were the former managing members of the Fund (the "For*mer Managing Members*"). Nohl makes four arguments in his objection as to why this Court should deny or not rule on the Motion. First, he argues that the Plan is final, binding and not subject to modification. Second, he asserts that the Remedies Ruling cannot modify plan-based rights or contractual entitlements for various reasons, such as lack of finality of the ruling. Third, he asserts that the Remedies Ruling does not void plan-based equity interests or contractual rights. Finally, he takes the position that comity requires this Court to defer any interpretation of the Remedies Ruling.

An overarching theme in Nohl's brief is a narrative that the Motion is asking the Court to modify the Plan. The Plan itself indicates that no modification is necessary for this Court to rule that the Former Managing Members cannot receive distributions, because their rights to distributions have always been *conditional*, not absolute. As explained herein, the Plan,

---

[2] AP references Adversary Proceeding case number 20-02005, *U.S. Securities Exchange Commission v. Greenpoint Tactical Income Fund LLC et. al.*, filed in this Court.

2

particularly in Sections 3.3.3.I, 3.3.3.II, and 6.11, explicitly conditions its provisions on the results of the SEC Action and any order entered by a court of competent jurisdiction.

A.  Enforceability of a Plan Provision is Distinct From a Request to Modify the Plan.

Nohl mistakes the Motion's request for the Court to advise whether certain provisions of the Plan are effectively nullified by the Remedies Ruling as a request to "modify" the Plan pursuant to 11 U.S.C. §1144.  Even after plan confirmation, the bankruptcy court can expressly retain jurisdiction to enforce its own orders related to the administration of the estate.  *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc*., 355 B.R. 214, 219 (Dist. Hawai'i 2006).  This Court explicitly reserved jurisdiction in the Plan "[t]o enforce the terms and provisions of payments, rights, and interest required or created by the Plan."  *See* Confirmation Order, Ex. A. Plan, Section 7.7.  The Debtor is not asking this Court to modify the Plan.  Instead, it is asking this Court to advise or clarify whether certain Plan provisions are enforceable in light of the Remedies Ruling, which was entered after the Confirmation Order.

The Plan explicitly states "Notwithstanding any provisions herein to the contrary, no provision of the Plan, or any order confirming the Plan, (i) releases any Debtor or non-debtor person or entity from any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, or (ii) enjoins, limits, impairs, or delays the United States Securities Exchange Commission ("SEC") from pursuing any police or regulatory action against any Debtor or non-debtor person or entity in any forum, including the SEC Civil Action."  *See* Confirmation Order, Ex. A. Plan, Section 6.11. It was the SEC which sought and was granted the relief imposed by the Remedies Ruling. Therefore, the explicit language of the Plan itself prioritizes the Remedies Ruling entered in favor of the SEC over provisions of the Plan allowing the Former Managing Members distributions from the Debtor.

3

Further, with respect to Class 3B.II- Pre-Petition Indemnity Claim, the Plan allows the Managing Members a collective $72,720.90, which is to be paid prior to any redemptions required to be paid to Class 2A.II Leave Class Investors. *See* Confirmation Order, Ex. A Plan, Section 3.3.3 II. That section concludes that "allowance and payment of Class 3B.II Unsecured Claims will be paid *unless prohibited by law or order of a court of competent jurisdiction*." *Id*. (emphasis added). With respect to the Class 3B.II claim, the Plan limits payment of the claim in the event that an order by a court of competent jurisdiction prohibits such payment. Therefore, the Debtor seeks clarification that the claim itself should not be paid under the Plan, as a result of the Remedies Ruling.

B. The Remedies Ruling Can Modify the Rights of the Former Managing Members.

Nohl first attempts to argue that because he filed pending motions to reconsider the Remedies Ruling under Rules 59 and 60, this Court is prohibited from clarifying its own orders until the District Court rules on his motion to reconsider. As stated above, this Court has jurisdiction to enforce the Plan and its own orders and a motion to reconsider filed in another court is irrelevant.[3]

A Rule 59 motion suspends an order solely for the purpose of the deadline to appeal which is not applicable here and Rule 60(c)(2) states that a motion under Rule 60(b) does not affect the finality of a judgment. Fed.R.Civ.P. 60(c)(2). The particular provisions in the Remedies Ruling related to the Motion and the Debtor's request for clarification involve the injunctive relief- *i.e.* the prohibition of the Former Managing Members from collecting fees from the Debtor. Rule 62(c) states "[u]nless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: (1) an interlocutory or final judgment in an action for an injunction or

---

[3] The Debtor is perplexed as to why Nohl cites to *Weaver v. Champion Petfoods USA, Inc*., 3 F.4th 927,938 (7th Cir. 2021) because that case has nothing to do with the issues asserted in the Motion.

4

receivership…". Fed.R.Civ.P. 62(c).  Nohl has not asserted that the District Court entered an order staying the Remedies Ruling.

Nohl also argues that even if the Remedies Ruling is final, it only enjoins collection and does not reinterpret rights fixed by the Confirmation Order.[4]  First, as noted herein, several sections of Plan state that the provisions are subject to applicable law and order by a court of competent jurisdiction.  Second, if a creditor or equity holder is forever barred from collecting a claim, then the logical conclusion is that the claim becomes effectively null.  That is the very point on which the Debtor needs clarification.

   C.  <u>The Plan, when Coupled with the Remedies Ruling, Bars Compensation of Pre-Petition Management Fees in the Form of Equity.</u>

Nohl, again, attempts to characterize the Motion as a motion to modify the Plan under 11 U.S.C. §1141(a). His theory is that once the Former Managing Member's equity rights are "vested" somehow under the Plan, they are forever enforceable notwithstanding the Remedies Ruling.  The situation is much more complicated than that.

The Plan allows the Former Managing Members' claims for pre-petition management fees and reimbursements in Class 3B.I in the amount of $1,400,000 and to be paid in the form of Non-Priority A Equity Interests instead of cash.  *See* Confirmation Order, Ex. A Plan, Sect. 3.3.3 I.  But that section of the Plan concludes by stating "[t]hese claims will be treated as provided herein *unless prohibited by law or order of a court of competent jurisdiction*." *Id*.  The Remedies Ruling was entered by a court of competent jurisdiction and permanently enjoins the Former Managing Members from "seeking to collect any fees, including via any organization controlled by them (e.g., H Informatics), from GTIF [the Fund] and its subsidiaries [GPRE]."  *See* District Court

---

[4] Nohl also asserts in passing that the Remedies Ruling is "prospective only," but it is difficult to understand what that means or how to respond to it.

5

Order, Motion **Exhibit A**.  Also, since Section 6.11 of the Plan makes its provisions conditioned upon the SEC Action, any right to compensation thereunder could not "vest" until the resolution of the SEC Action.

It seems clear that the Former Managing Members cannot seek payment of management fees in cash, but what is less clear is whether the Plan's conversion of the payment of management fees from cash to equity interests would also be prohibited. The Remedies Ruling prohibits the Former Managing Members' collection of management fees.  It is illogical that the Former Managing Members can escape the penalization of the Remedies Ruling on the sole basis that the form of compensation was changed by the Plan from cash to equity interests.  That is what the Debtor is seeking clarification on.

> D.  Nothing Prohibits this Court from Clarifying its Own Orders.

Nohl's final argument is that out of fairness and comity, the Motion should be denied or deferred until the District Court rules on his Rule 59 and Rule 60 motions. The doctrine of comity would allow a court discretion to hold off on ruling so as not to interfere with another court.  In this case, the Debtor is not asking the Court to interfere in any way with the District Court.  The District Court has issued its ruling.  That ruling has not been stayed. The purpose of Rule 59 motions is not to reargue or relitigate matters already decided.  *Axtria, Inc. v. OKS Group, LLC*, 2024 WL 37949, *4 (E.D.Penn. Jan. 3, 2024).  The Debtor is asking for guidance on how to interpret *this* Court's orders, in consideration of the District Court's ruling.

**II.  Objection of Erick Hallick**

Hallick's situation is more difficult.  Hallick is an investor in the Debtor.  He purchased the assets of GAM II in a Wisconsin receivership sale, with court approval.  The Wisconsin Circuit Court order states that Hallick "will not be liable for any of GAM II's liabilities or obligations

6

except those expressly assumed in the APA (if any)." *See* Hallick Response [Doc 1746-1]. The sale occurred *after* the Confirmation Order was entered, which granted GAM II claims and equity interests under the Plan, but *before* the Remedies Ruling was entered, which permanently enjoined GAM II from collecting on its claims against the Debtor.

Hallick asserts that the Remedies Ruling does not strip his ownership of the shares in the Debtor which he acquired in the receivership sale. The Debtor can understand both sides of the argument. On one hand, Hallick is standing in the shoes of GAM II and should be limited to the rights and remedies available to GAM II. On the other hand, the Remedies Ruling was punitive and not directed at and does not directly enjoin Hallick. It prohibits GAM II from collecting, not Hallick. The Debtor seeks the result that is the fairest to the investors in the Fund, and in the spirit of and in compliance with the Remedies Ruling. The best way to achieve that is to have this Court guide the Debtor on how to best administer the Plan.

### Conclusion

In conclusion, when reading the language of the Plan and the Remedies Ruling together, it seems apparent that the Former Managing Members are enjoined from receiving further creditor or equity distributions from the Debtor. A jury found that the Former Managing members committed fraud upon the investors in the Fund, which is what necessitated the bankruptcy proceeding in the first place. Allowing the Former Managing Members to collect millions of dollars in management fees, while they are subject to a $16 million disgorgement judgment because of their fraud would be grossly inequitable to the Fund and its investors. This is especially true because the District Court declined the SEC's request to hold the Fund jointly and severally liable.

It is not clear whether those restrictions would apply to Hallick who purchased GAM II's rights prior to the entry of the Remedies Ruling. The Debtor seeks clarification on all issues discussed in the Motion and herein, so that it can comply with the Plan in the best and most equitable manner possible.

Dated: January 12, 2026

**SMITH GAMBRELL & RUSSELL LLP**

By: /s/ Shelly A. DeRousse
          One of Its Attorneys

Shelly A. DeRousse
Elizabeth L. Janczak
155 North Wacker Drive, Suite 3000
Chicago, IL 60606
Tel:     312.360.6000
Fax:    312.360.6520
Email:  sderousse@sgrlaw.com
         ejanczak@sgrlaw.com

*Counsel for the Reorganized Debtors*

8

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

In re:

| | |
|---|---|
| Greenpoint Tactical Income Fund, LLC n/k/a Alluvium Fund LLC and GP Rare Earth Trading Account LLC, | Case No. 19-29613-gmh<br>Case No. 19-29617-gmh |
| Jointly Administered Debtors. | Chapter 11<br>(Jointly Administered Under Case No. 19-29613) |

**CERTIFICATE OF SERVICE**

I, Shelly A. DeRousse, an attorney, hereby certify that on January 12, 2026, I caused a true and correct copy of the foregoing *REPLY IN SUPPORT OF MOTION TO CLARIFY PLAN OR REORGANIZATION AND CONFIRMATION ORDER*, to be filed with the Court and served upon all parties who have appeared or requested notice via the Court's CM/ECF Service List as well as the persons indicated below via U.S. Mail.

/s/ Shelly A. DeRousse

**U.S. Mail**

Seth E. Dizard
O'Neil Cannon Hollman DeJong & Laing S.C.
111 East Wisconsin Avenue, Suite 14001
Milwaukee, Wisconsin 53202

Christopher Nohl
3240 N. Summit Ave.
Milwaukee, WI 53211

Greenpoint Asset Management II LLC
c/o Lauren Kelly
N76 W36207 Saddlebrook Lane
Oconomowoc, WI 53066
Michael Hull
N76 W36207 Saddlebrook Lane
Oconomowoc, WI 53066

Jerome R. Kerkman
Kerkman & Dunn
839 N. Jefferson St., Suite 400
Milwaukee, WI 53202

Erick Hallick
24844 West Lake Forrest Lane
Shorewood, IL 60404

Andrew H. Robinson
Mallery S.C.
731 North Jackson Street, Suite 900
Milwaukee, Wisconsin 53202

Jessica Haskell
O'Neil Cannon Hollman DeJong & Laing S.C.
111 East Wisconsin Avenue, Suite 14001
Milwaukee, Wisconsin 53202

2